IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHARON BLOODSWORTH,                                              CV 08-522-SU

        Plaintiff,                                              OPINION AND ORDER

        v.

UNITED STATES OF AMERICA,

        Defendant.

SULLIVAN, Magistrate Judge:

      Plaintiff Sharon Bloodsworth brought this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346(b), against the United States, alleging personal injuries as a result of the government shooting over her property from a plane, which caused her horses to bolt and one of them to collide with her. The government filed a motion for summary judgment based upon a lack

Page 1 - OPINION AND ORDER

of subject matter jurisdition due to the discretionary function exception of the FTCA. For the reasons stated below, the United States' Motion for Summary Judgment is denied.[1]

*Factual Background*

The Secretary of Agriculture is authorized "to conduct a program of wildlife services with respect to injurious animal species and take any action the Secretary considers necessary in conducting the program." 7 U.S.C. § 426. Wildlife Services ("WS"), a component of Animal and Plant Health Inspection Services ("APHIS"), is the agency within the Department of Agriculture ("DOA") responsible for resolving problems arising from wildlife damage to agricultural and natural resources. (Jeffrey S. Green Decl. § 4, April 15, 2009.) WS uses various methods to control invasive or damaging species, including aerial shooting of predators such as coyotes who kill livestock. (Green Decl. §§ 6, 10-11.)

WS has issued agency directives to provide guidance to WS personnel who conduct wildlife control operations. (Green Decl. §5, Ex. A and B.) According to APHIS and WS directives, the protocol is as follows: A landowner files a request which is evaluated by WS personnel. WS then determines the best method for controlling the problem animals. Before WS will provide assistance to the landowner, however, the landowner must sign an "Agreement for Control of Animal Damage on Private Property" ("Agreement") with APHIS that authorizes WS to conduct wildlife control operations, including aerial shooting operations, on a landowner's property. (Green Decl. § 9.) The directives do not require WS personnel to inform either the requesting landowner, adjacent property owners, or the general public of the ensuing operation. Agreement by a landowner on one occasion, unless revoked, gives WS authority to conduct operations on the landowner's property without

---

[1]The parties have consented to jurisdiction over this matter by the magistrate judge pursuant to 28 U.S.C. § 636(c).

Page 2 - OPINION AND ORDER

notice. (Green Decl. § 5, Ex. A and B.) The parties dispute, however, whether notice of an aerial shooting operation must be given to the owner of land over which an aerial hunting operation occurs.

King Williams owned property adjacent to the property owned by Bloodsworth and her husband ("Bloodsworth property") in Wallowa County. In January 2004, Williams entered into an Agreement with APHIS. (Elizabeth J. Groth Decl. Ex. A, April 16, 2009.) Although the Bloodsworths did not have such an Agreement with the government, other landowners adjacent to the Williams property did have Agreements with the government to conduct wildlife control operations. (Groth Decl. Ex. A; Marilyn Riggs Decl. § 8, May 19, 2009.)

On the morning of August 1, 2006, pursuant to a request by Williams, WS conducted an aerial shooting operation to kill coyotes reported to be responsible for destruction of Williams' livestock. (Katherine C. Lorenz Decl. Ex. C, April 17, 2009.) Bloodsworth heard the sound of a plane and gunshots that startled her horses. (Lorenz Decl. Ex. A at 8-9.) She attempted to round up her horses and one of them bolted and knocked her to the ground. (Lorenz Decl. Ex. A at 11-12.) Bloodsworth sustained injuries as a result of the collision with her horse (Lorenz Decl. Ex. E) and the parties do not dispute the extent of her injuries.

Bloodsworth alleges that WS employees conducted an aerial shooting operation near and *over* her ranch. (Steven L. Hill Decl. Ex. A at 1.) Bloodsworth's Complaint alleges that the United States was negligent as follows:

> (a) Shooting animals with a rifle from a fixed wing aircraft over Plaintiff's property without giving prior notice to Plaintiff when Defendant knew or should have known that shooting animals in this manner would spook livestock on Plaintiff's property;
>
> (b) Flying at low altitude over Plaintiff's property without giving prior notice to Plaintiff when Defendant knew or should have known that doing so would spook livestock on Plaintiff's property;

Page 3 - OPINION AND ORDER

(c) Flying at low altitude and shooting over Plaintiff's property when Defendant saw or should have seen people or livestock or both nearby and when Defendant knew or should have known that doing so would spook livestock on Plaintiff's property.

(Compl. § 8.)

The government admits that it neither gave notice to Bloodsworth of its aerial hunting operation nor obtained her consent before the operation began. (Answer §§ 11-12.) Loren Hoepfner, the shooter, admits to flying over the Bloodsworth's property but denies shooting over it. He further states that it is "policy" not to conduct shooting operations without landowner's consent. (Hill Decl. Ex. B at 3.)

*Standard of Review*

Summary judgment is appropriate "if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id.* at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*Discussion*

The United States' seeks summary judgment against Bloodsworth's claims under the FTCA on the ground that the court lacks subject matter jurisdiction over this matter. The government contends it is shielded from liability for any activities resulting in the injuries alleged by Bloodsworth based on the discretionary function exception to the FTCA. *See* 28 U.S.C. § 2680(a). Simply put, the FTCA grants federal courts jurisdiction over damages claims against the United States "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any

Page 4 - OPINION AND ORDER

employee of the Government while acting within the scope of his office or employment." *Id.* at § 1346(b). Under the FTCA, the government may be held liable for negligence "in the same manner and to the same extent as a private individual under like circumstances." *Id.* at § 2674. The government, however, does not waive immunity under the FTCA for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." *Id.* at § 2680(a).

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *U.S. v. Varig Airlines*, 467 U.S. 797, 808 (1984). The discretionary function exception is designed to "prevent 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991). Discretion may be exercised at either the operational or the planning stage. *Id.*

In *Berkovitz v. United States*, 486 U.S. 531, 536 (1988), the Supreme Court laid out a two-part test to govern the discretionary function exception. First, for the exception to apply, the challenged conduct must be discretionary, i.e., it must involve an element of judgment or choice. This requirement is not satisfied (allowing the suit to proceed) where a "federal statute, regulation or policy specifically prescribes a course of action for an employee to follow," because "in this event, the employee has no rightful option but to adhere to the directive." *Id.* Where alleged conduct violates a mandatory directive, it is not discretionary. *Oberson v. U.S. Dept. of Agriculture, Forest Service*, 514 F.3d 989, 997 (9th Cir. 2008); *GATX/Airlog Co. v. U.S.*, 286 F.3d 1168, 1175 (9th Cir. 2002).

If the conduct involves choice or discretion, the court must next determine whether the conduct was the kind that the discretionary function exception was designed to shield. *Berkovitz*, 486 U.S. at 536. When a statute or regulation allows a federal employee to act with discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324; *accord GATX/Airlog*, 286 F.3d at 1174. The Ninth Circuit has held that when acting according to its legally authorized discretion, the United States is not subject to suit. *See generally Valdez v. U.S.*, 56 F.3d 1177 (9th Cir. 1995) (The United States was not liable for hiker's injuries sustained when he fell off a waterfall where National Park Service's discretionary decision not to place a warning sign at the edge of a cliff was based on public policy considerations, i.e., the desire not to proliferate signs or the feasibility of maintaining them.).

Bloodsworth does not challenge the authority of the government to conduct wildlife control operations, including aerial shooting. The United States contends that it is not liable because the government's activities regarding those operations were solely based on policy decisions of the WS. Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the agency action. *GATX/Airlog*, 286 F.3d at 1174. When determining whether the discretionary function exception is applicable "the proper question to ask is not whether the Government as a whole had discretion at any point, but whether its allegedly negligent agents did in each instance." *Id.* (quotations and citation omitted). The government bears the burden of proving that the discretionary function exception applies. *Id.*

Focusing on Bloodsworth's allegation that there was a failure to give her notice of the aerial shooting operation, the United States argues that the WS agents, acting pursuant to their authority granted by the DOA, are shielded from liability because the decision not to give notice of aerial shooting to adjacent landowners falls under the discretionary function exception. The United States

Page 6 - OPINION AND ORDER

argues that Bloodsworth's injuries were due solely to the lack of notice that an aerial shooting operation was going to take place on the adjacent property. The government contends that the decision not to inform affected adjacent landowners of imminent aerial shooting operations by the WS was a decision based on economic and social policy. Specifically, the managers of WS determined that providing advance notice of aerial shooting operations to affected adjacent landowners involved competing policy considerations, including resource allocation, safety, political controversy and feasibility of accomplishing its objectives. (Green Decl. §§ 15-20.) For example, the government argues that notice to affected adjacent landowners would be prohibitively expensive, that weather changes would make notice impractical, and, if notice were provided, protesters may attempt to prevent the officers from carrying out the operations by scaring the animals or even shooting at the planes. (Green Decl. §§ 15-20.)

Hoepfner (the shooter) stated in his deposition that it was not the "policy" of the WS to shoot over land without permission. Green stated in his declaration that "no laws, regulations, policies, or directives administered by APHIS address whether WS personnel are required to provide advance notice to *affected* adjacent property owners or the general public before engaging in aerial operations, including aerial shooting." (Green Decl. § 4 (emphasis added).)

The United States insists that: (1) Bloodsworth's injuries were caused by a failure to provide notice of the aerial shooting operation and not by shots fired over her property (which the government denies occurred); and (2) it was the "distant" shots, not those over Bloodsworth's own property, that were the cause of her injuries. Consequently, Bloodsworth was not injured by shots fired over her property, but by the fact that she was not notified the shooting was to occur and, in either case, the discretionary function exception applies.

In response, Bloodsworth argues that shooting over her property was a violation of WS policy and not within the agency's discretion or within the exception. Further, Bloodsworth contends that WS's own policy and regulations require the agency to obtain consent from a landowner before proceeding with aerial shooting over the landowner's property. WS is to conduct operations *only after* a landowner has requested assistance in dealing with wildlife and signed an Agreement to that effect. Bloodsworth maintains that there is an accepted protocol for conducting aerial shooting operations and deviating from that protocol bars the discretionary function exception.

There is a dispute here whether the shooting took place over Williams' property only or, as Bloodsworth claims, over the adjacent property belonging to Bloodsworth. While the court agrees with Green that the WS directives say nothing about advance notice to "affected" adjacent property owners, there is nothing in the directives that authorizes agents to pursue targeted wildlife beyond the requesting property owner's land without consent from the other affected landowner. Nor does the government suggest that WS can send agents in armed pursuit of fleeing wildlife over property of adjacent landowners with whom the government has no Agreement. Thus, the question is not whether WS is required to give notice to an adjacent property owner when it conducts shooting operations over the property of a requesting/agreeing party. Rather, the relevant question is whether WS is required to get consent from the adjacent property owner, by way of an Agreement, before conducting a shooting operation over that adjacent property.

The Ninth Circuit's decision in *General Dynamics Corp. v. U.S.*, 139 F.3d 1280 (9th Cir. 1998), relied upon by the United States for a finding of a discretionary function exception, does not alter the outcome here. In *General Dynamics*, the court held that the government was immune from liability for a criminal prosecution based upon a negligently prepared auditor's report. The United States argues that Bloodsworth's claims are solely the result of a failure of notice, a discretionary

Page 8 - OPINION AND ORDER

function based upon decisions of the WS.  The government's reliance on *General Dynamics* is misplaced because Bloodsworth claims her injuries are a result of the government's failure to follow its own required procedures regarding the aerial shooting operation.  *See In re Glacier Bay,* 71 F.3d 1447 (9th Cir. 1995) (hydrographers allegedly failed to follow required procedures in collecting data so that action for negligence was not precluded by the intervention of reviewers who performed discretionary functions).

While the decision not to provide specific notice of an aerial shooting operation to adjacent property owners may be a discretionary decision, Bloodsworth's allegations are that she was injured by her horses that bolted because of shots fired above *her* property.  Thus, Bloodsworth's allegations of negligence include not only the failure of notice by the WS, but also that it was negligent in flying and shooting over her property.

Bloodsworth concedes that the first two allegations of negligence in her Complaint include the phrase "without giving prior notice."  (Compl.§ 8(a)-(b).)  At oral argument, counsel for Bloodsworth explained that the term "notice" was intended broadly to refer to the consent required to conduct aerial operations over a landowners property, not necessarily notice required on a particular occasion.  Bloodsworth's pleadings are sufficient to raise these issues.  If the United States and Bloodsworth had entered into an Agreement consenting to an aerial shooting operation, she would have been on notice of such an operation but not necessarily a day and time for the operation.  The issue is not one of notice but of consent.  Once consent is agreed upon between WS and a landowner, WS need not give notice to those landowners of when it will conduct aerial operations.  Thus, if the only allegations were that aerial shooting over the *Williams'* property without notice caused the horses to bolt, the discretionary function exception may succeed to deprive this court of jurisdiction.  That is not the sole allegation, however.  Bloodsworth alleges that the

Page 9 - OPINION AND ORDER

government was negligent in conducting its aerial hunting operation, including shooting over her property without her consent. Thus, Bloodsworth's injuries would have resulted not from a policy decision not to give her notice of the operation, but from a violation of its own regulation. The discretionary function exception does not apply to Bloodsworth's allegations of negligence.

This is a negligence case and unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326, 1336 (1987). Bloodsworth's claim is set in the classic *Fazzolari* framework: Did WS unreasonably create "a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff" in flying and shooting over her property. *Id.* This allegation is not predicated on notice, and, the language of Bloodsworth's first two specifications of negligence regarding notice need not dictate the analysis. According to its own directives, WS cannot conduct aerial shooting operations over someone's property without permission. The questions of whether there were shots fired over Bloodsworth's property and whether it was those shots that caused her horses to bolt is a factual matter that cannot be resolved on summary judgment. The United States' Motion for Summary Judgment is denied.

*Conclusion*

Based on the foregoing, the United States' Motion for Summary Judgment (doc. #18) is DENIED.

Dated this  23rd  day of July, 2009.

IT IS SO ORDERED

                                                /s/ Patricia Sullivan
                                                Patricia Sullivan
                                    United States Magistrate Judge