IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHARON BLOODSWORTH,                                          CV 08-522-SU

           Plaintiff,                                 FINDINGS OF FACT AND
                                                      CONCLUSIONS OF LAW
    v.

UNITED STATES OF AMERICA,

           Defendant.

SULLIVAN, Magistrate Judge:

      Plaintiff Sharon Bloodsworth brought this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), against the United States, alleging personal injuries as a result of an aerial hunting operation conducted on August 1, 2006, by the Department of Agriculture over her property in Wallowa County, Oregon. Plaintiff alleges that she was knocked to the ground by one of her horses following an aerial shoot and suffered serious injury as a result. Plaintiff alleges her horse was spooked because defendant's employees, acting within the course and scope of their employment, conducted an aerial shooting operation of coyotes over her property, without her permission and without prior notice of the operation. Plaintiff alleges that the injuries she sustained

Page 1 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

when her horse knocked her down were caused in whole or substantial part by the government's negligence. Plaintiff seeks economic damages for her medical expenses in the amount of $49,383.55, and noneconomic damages for pain and suffering in the amount of $100,000.

Plaintiff has submitted medical records and testimony regarding her injuries. Neither the fact of injuries, nor her damages for medical expenses, $49,383.55, are in dispute. There is, however, a significant dispute over the events occurring on August 1, 2006, and whether defendant is liable for plaintiff's injuries. Plaintiff maintains that the aerial hunt took place, in part, over her property and that, as a result of the hunt, the four horses on her property were "spooked," causing one of them to run into plaintiff and knock her to the ground. Defendant denies that any hunting took place over the Bloodsworth property and that defendant's aerial hunting operation did not cause plaintiff's injuries.

This case was tried before the court on November 16, 2009, before Magistrate Judge Patricia Sullivan, sitting without a jury.[1] The court heard and reviewed the testimony of the witnesses; and considered the evidence of record, the credibility of the witnesses, the entire file of the court, and the contentions and arguments of counsel. In accordance with Fed. R. Civ. P. 52(a), the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.      Plaintiff in this action is Sharon Bloodsworth. Defendant United State of America operates a program through Wildlife Services, a part of the Department of Agriculture, that deals with wildlife damage to livestock, wildlife and human health and safety issues.

---

[1] Both liability and damages are resolved by the court as the FTCA does not provide for a trial by jury. The parties have consented to jurisdiction over this matter by the magistrate judge pursuant to 28 U.S.C. § 636(c).

Page 2 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

2. On August 1, 2006, plaintiff was injured when she was knocked to the ground by one of her horses. Plaintiff suffered injuries to her chest, lungs and ribs, and incurred medical expenses in the amount of $49,383.55.

3. Plaintiff owns property with her husband, Lew Bloodsworth, in Wallowa County, Oregon. The Bloodsworth property is bordered on the north and west by the Gazelle ranch owned by King Williams. The Bloodsworth property includes a house, barn and other out buildings. There is a fenced pasture located to the east of Zumwalt Road (a county road running north and south), a fenced and gated pasture adjacent to the barn, and a fenced meadow south of the house and barn. The Bloodsworth house and barn are situated approximately in the center of their property, with a driveway running east from Zumwalt Road for one quarter to one half mile.

4. Sharon and Lew Bloodsworth are employed by the Nature Conservancy in Wallowa County. The Nature Conservancy owns approximately 37,000 acres in Wallowa County, including the Zumwalt Preserve. The Nature Conservancy property is located generally north and east of the Bloodsworth property. Local ranchers pasture their cattle on the preserve. The Bloodsworths fix fence, check the pasture and take care of and move cattle on the preserve. The Bloodsworths own horses, including four saddle mares, that are used and ridden by the Bloodsworths to round up cattle.

5. The Secretary of Agriculture is authorized by statute to "conduct a program of wildlife services with respect to injurious animal species and take any action the Secretary considers necessary in conducting the program." 7 U.S.C. § 426. Wildlife Services is the agency within the Department of Agriculture responsible for solving the problems arising from wildlife damage to agricultural and natural resources.

6. Wildlife Services personnel use both lethal and nonlethal management methods to control this damage. In addition, their strategies can be either preventive (*i.e.*, applied before any damage is done), or corrective (*i.e.*, used after damage is already occurring). An aerial shooting operation is one type of corrective strategy, and is generally conducted in areas where there has been documented damage to livestock by predators such as coyotes.

7. During an aerial shooting operation, a Wildlife Services ground crew helps guide a flight crew to the coyotes' locations via radio communications. As part of Wildlife Services' damage control program, it responds to requests submitted by the public, the private sector, and government agencies who seek assistance with damage caused by wildlife. Before Wildlife Services will assist private property owners with wildlife damage issues, the owners sign an "Agreement for Control of Animal Damage on Private Property" ("Control Agreement"). These Control Agreements are effective until the property owners request that the government discontinue its services.

8. An operation is triggered by a request from a landowner, but no notice is provided by Wildlife Services regarding the precise time of the operation. A Control Agreement signed by a cooperating landowner allows Wildlife Services to conduct an operation on or over the landowner's property even if that landowner did not make the specific request.

9. The Bloodsworths did not have a Control Agreement with Wildlife Services. Wildlife Services is not obligated to notify cooperating landowners or non-cooperating landowners of an aerial hunting operation.

10. On the morning of August 1, 2006, three Wildlife Services employees conducted an aerial shooting operation near plaintiff's ranch in Wallowa County. Paul Wizner, the pilot, and Loren Hoepfner, the shooter, were in the fixed wing airplane, which left from LaGrande, flying up

Page 4 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

to the hunting destination in Wallowa County. There, they made radio contact with Marlyn Riggs, a Biological Science Technician, who was on the ground. Mr. Riggs maintained radio contact with the plane throughout the aerial shooting operation. John Williams,[2] an Associate Professor at Oregon State University in the Department of Rangeland Ecology and Management was present with Mr. Riggs on the ground that morning.

11. Wildlife Services was conducting the August 1, 2006, shooting operation in response to a request from one of plaintiff's neighbors, King Williams, who had experienced trouble with coyotes harming livestock on his property. Mr. Williams previously entered into an "Agreement for Control of Animal Damage on Private Property" on January 15, 2004, and had requested Wildlife Services' assistance approximately six to eight times between that date and August 1, 2006.

12. Wildlife Services killed approximately 19 coyotes on August 1, 2006. The hunt took place on the properties of Mr. Williams and several neighboring landowners with whom it had entered into signed agreements. No landowners in the area were notified about the aerial hunting operation.

13. An aerial hunting operation, includes flying low over property and shooting at coyotes. Defendant is not permitted to hunt over plaintiff's property without her consent. Defendant did not seek or receive plaintiff's consent to shoot coyotes on her property. On August 1, 2006, an aerial hunt for coyotes took place on a portion, albeit a very small portion, of plaintiff's property without her consent.

---

[2] John Williams, the OSU professor who was on the ground on August 1, 2006, with Marlyn Riggs, is the brother of King Williams.

Page 5 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

14. Shots from the aerial hunt were fired over the Bloodsworth property between 6:15 and 6:30 a.m. on August 1, 2006. Prior to the aerial gunshots the Bloodsworth's horses were standing docile in their pasture. The noise from those shots "spooked" the Bloodsworth's horses, causing them to run back and forth in the pasture.

15. Plaintiff was inside her home when the plane flew over her property and the ariel shots were fired. Plaintiff heard the shots and saw from her window that the horses had been spooked. She headed outside to help her husband who had begun to round up the horses. During their attempt to round up the horses, plaintiff was injured when one of the horses, Mazy, bolted and ran into plaintiff.

16. Based on all of the evidence and testimony presented, the court concludes that plaintiff established by a preponderance of the evidence that aerial gunshots were fired from a low flying plane over the Bloodsworth property on the morning of August 1, 2006, and those gunshots caused one of their horses, Mazy, to bolt and run over plaintiff, which resulted in her injuries. Plaintiff's medical expenses for those injuries total $49,383.55.

## *CONCLUSIONS OF LAW*

1. The applicable substantive law in this FTCA case is that of the State of Oregon, where plaintiff's alleged injuries occurred. *See* 28 U.S.C. §§ 1346(b)(1) and 2672. In her Complaint, plaintiff alleges a claim for negligence.

2. Under Oregon law, in the absence of a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct depends on whether that conduct unreasonably created a

foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326, 1336 (1987).

3.  The court determined above that Wildlife Service fired shots over plaintiff's property on the morning of August 1, 2006, and those aerial shots caused her horse to spook and injure her. The question for the court is whether there was a foreseeable risk of harm to plaintiff from defendant's conduct and whether Wildlife Services acted unreasonably in light of that risk. *Id.*

4.  The court finds defendant had knowledge of the near proximity of the Bloodsworth pasture to the hunt area; and, that it was reasonable that horses would have occupied that pasture.

5.  The court finds that flying low and shooting over plaintiff's property, without permission, was a violation of Wildlife Services own policy and regulations; and, that flying low and shooting from a plane could have been heard by anyone near the Bloodsworth driveway, including horses.

6.  The court finds that horses are susceptible to sudden noises, which can cause them to run around in a panicked state; and, that defendant knew or should have known a horse running around in a panicked state could cause an injury to itself or others.

7.  The court concludes that by operating an aerial hunt over plaintiff's property defendant created an unreasonable and foreseeable risk of harm to a person in plaintiff's position. *Fazzolari*, 303 Or at 17. Plaintiff's injuries were caused by defendant's negligence when defendant's aerial hunting operation conducted over the Bloodsworth's property, without consent, spooked plaintiff's horse, Mazy, causing the horse to panic and run into plaintiff.

8.  In Oregon, a plaintiff's contributory negligence does not necessarily bar her recovery, but the defendant's liability, if any, is limited to its proportionate share of the fault. Or.Rev.Stat. §

Page 7 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

31,600. To the extent plaintiff's own negligence contributed to her injuries, therefore, any award of damages must be reduced by that same percentage. *Id.* Plaintiff is not entitled to recover any damages if the court finds that she is more than fifty percent at fault for her injuries. *Id.*

9.  The court finds that defendant did not carry its burden of proof regarding comparative fault. It was not unreasonable for plaintiff to leave her house to check on her horses and assist her husband. Plaintiff took reasonable measures to stay out of the way of the horses, and Mazy's conduct in charging plaintiff was surprising and unexpected. Defendant failed to present sufficient evidence that plaintiff acted unreasonably under the circumstances.

10. The court finds plaintiff suffered serious injuries that resulted in medical costs totaling $49,383.55. The court also finds that plaintiff has suffered and continues to suffer from her injuries, including a significant change in her ability to work and function around the ranch and outside of her home; a reduction in energy and stamina; and continued pain and discomfort. Plaintiff's noneconomic damages total $100,000.

11. Any Findings of Fact that constitute Conclusions of Law and Conclusions of Law that constitute Findings of Fact shall be deemed to have been determined accordingly.

12. Judgment is entered for plaintiff in the amount of $149,383.55.

IT IS SO ORDERED.

Dated this 13th day of January 2010.

                                              /s Patricia Sullivan
                                              Patricia Sullivan
                                              United States Magistrate Judge